# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA M. VILLAFANA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>　　　　　Defendant. | 1:08cv1954 GSA<br><br>ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT |

## **BACKGROUND**

Plaintiff Maria M. Villafana ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] Both parties consented to the jurisdiction of the United States Magistrate Judge for all purposes.

## **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed her application on or about January 18, 2006, alleging disability beginning January 1, 2000, due to back and knee pain, asthma, bronchitis and depression. AR 113, 124-126, 132, 456-63. Her application was denied initially and on reconsideration. AR 113-16, 119-23, 454-55. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 45. ALJ Christopher Larsen held a hearing on March 13, 2008, and issued an order denying benefits on June 25, 2008. AR 15-21, 47-96. On September 25, 2008, the Appeals Council denied review. AR 6-8. On December 4, 2008, the Appeals Council granted Plaintiff's request for an extension of time to file a civil action. AR 4-5.

**Hearing Testimony**

ALJ Larsen held a hearing on March 13, 2008, in Fresno, California. Plaintiff appeared and was represented by attorney Melissa Proudian. Vocational Expert ("VE") Judith Najarian also testified. AR 47-96.

Plaintiff was born on November 15, 1976. AR 54. She is five feet one inch tall and weighs 177 pounds. AR 54. She is married and currently lives in a home with her husband and her five children who are twelve, ten, eight, six and four years old. AR 55.

Plaintiff has a valid California driver's license and drives approximately two days a week. AR 56. On the other days, Plaintiff gets around by taking the bus. AR 56. She used to drive three times a week, but has limited her driving since February, 2008 due to her dizziness. AR 56-57.

Plaintiff's highest grade completed in school was the ninth grade. AR 56. She does not have a GED or a diploma. AR 56. She also does not have any vocational training. AR 57. Plaintiff can read in English, but writes "very little" English. AR 57. When asked if she were home, could she take a note or message for somebody on the phone and write the message down in English, Plaintiff answered that she could not. AR 58. Plaintiff can read and write in Spanish. AR 58.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff has held several jobs in the last fifteen years.  Plaintiff currently works part-time as a noon-time assistant at an elementary school.  AR 58.  She started that job in February 7, 2007 and works two hours a day, approximately three to four days a week.  AR 58-59.  She currently makes eight dollars an hour.  AR 59.  Her paychecks range from $184.00 per month to $300.00 per month.  AR 59.  Plaintiff is not required to lift anything at her job.  AR 59.  Her duties include walking around the school during lunchtime.  AR 59.  When asked if the school offered her more hours could she or would she be able to do the work, Plaintiff responded "no" due to her back and knee problems.  AR 60.

From 2004 to 2005, Plaintiff worked full-time on an assembly line for Foster Farms for approximately seven months.  AR 60-61.  When asked about the heaviest amount of weight she had to lift, Plaintiff answered ten pounds.  AR 60-61.  She was responsible for cutting the breasts off the chickens before they were packed.  AR 61.  Plaintiff stopped working for Foster Farms because her supervisor had told her that she "needed to be more at work instead of taking more days off."  AR 61.  Plaintiff testified that her doctor always "put [her] off [work] because of [her] back pain."  AR 61.

From 2000 to 2001, Plaintiff worked full-time for Mission Foods packing tortillas.  AR 61.  When asked about the heaviest amount of weight she had to lift, Plaintiff answered approximately twelve pounds.  AR 61.  She was laid off from Mission Foods because "they didn't want to give [her] maternity leave."  AR 61-62.

In 2000, Plaintiff worked as an assembler for approximately three months.  AR 62.  Prior to the assembler job, Plaintiff worked full-time as a cashier in a fast food restaurant in Rowland Heights, California for a little over three months.  AR 62.  As a cashier, Plaintiff did not have to lift anything.  AR 62.  Plaintiff stopped working as a cashier because she moved.  AR 63.  Prior to the cashier job, Plaintiff worked for McDonald's for less than three months.  AR 63.

In 1998, Plaintiff worked as a seasonal farm laborer for approximately two years.  AR 63.  She worked "two seasons," approximately four months during each year.  AR 63.  As a farm laborer, Plaintiff sorted walnuts.  AR 63.

When asked if she could work at any job eight hours a day, five days a week, and not just at her noontime assistant job, but any jobs, Plaintiff responded "no" because her back and right knee hurt. AR 64. Plaintiff also testified that there were other problems that would prevent her from work including asthma, seizures, thyroid problems, and urination problems. AR 64.

With regard to her asthma, Plaintiff testified that it affects her the most. AR 64. She experiences shortness of breath four to five days a week and it typically occurs when she "mov[es] around a lot." AR 65. Her breathing problems are triggered by many irritants including Clorox bleach, dust, pollen, detergents, ammonia, and extreme hot temperatures. AR 68-69. Although she cannot be exposed to Clorox or pollen, she can be exposed to a minimal amount of dust. AR 68.

Plaintiff treats her shortness of breath by using an inhaler and when that doesn't alleviate it, she uses a Nebulizer. AR 65. Plaintiff has a prescription for three inhalers with a Nebulizer, two inhalers and a breathing machine. AR 65-67. She also treats her shortness of breath by sitting down for approximately fifteen to thirty minutes. AR 66. Plaintiff will use a Nebulizer every time she experiences shortness of breath. AR 66. When asked how often she uses a Nebulizer out of a typical seven-day week, Plaintiff responded five days. AR 66. She has used a Nebulizer for approximately a year and a half. AR 66. She also has a low energy level and has to take frequent rests during the day. AR 69-70. She testified that she needs to rest approximately ten hours a week. AR 70.

Plaintiff has had to seek emergency treatment for her shortness of breath. AR 67. The last time she went to the emergency room when she experienced shortness of breath was in September of 2007. AR 67. However, Plaintiff was not admitted over night. AR 67. In addition, Plaintiff also sought treatment on an emergency basis at her doctor's office in 2007 for shortness of breath when her doctor changed her inhaler. AR 67-68.

Plaintiff suffers from back pain daily. AR 72. She first started to have back pain in 2000 after she sustained an injury when she fell while washing her car and landed on the cement. AR 72-73. Plaintiff currently takes liquid Ibuprofen and receives morphine injections to treat her back pain. AR 73-74. However, the last morphine injection she received was approximately

four to five months ago. AR 73. Plaintiff has undergone physical therapy for her back pain, but claims it has not helped. AR 74.

Plaintiff's back pain affects her ability to function. AR 74. She has trouble bending, lifting and bathing her children. AR 75. She also has difficulty sitting in a chair; the maximum amount of time she can sit is approximately twenty minutes before her back starts to hurt. AR 75. In addition, Plaintiff can only stand for thirty minutes at a time due to her back pain. AR 75. Plaintiff claims the heaviest amount of weight she can lift is five pounds. AR 75. When asked about walking, Plaintiff claimed that she could only walk approximately ten to fifteen minutes and then she would have to stop. AR 75. Plaintiff also has difficulties reaching overhead with either arm, however, she does not have any difficulty reaching out in front of her at shoulder height. AR 76. She cannot use her arms on a repetitive basis because "things tend to fall off [her] hand" due to limited strength. AR 76. However, the use of her hands affect her back pain "very little." AR 76. When asked while standing, could she bend over and pick something off the ground and get back up, Plaintiff answered that she could, but it would be very slow and painful. AR 77. She has no scheduled future treatment for her back pain. AR 77.

Plaintiff has problems with her right knee; she experiences knee pain daily. AR 77-78. She testified that her knee pain triggers her back pain. AR 78. She treats her pain by taking the liquid Ibuprofen, however, it does not alleviate the pain. AR 78. The knee pain also affects her ability to function. AR 78. She cannot stand for very long on her right leg. AR 79.

Plaintiff suffers from urinary problems. She has experienced urinary incontinence since 1995. AR 79. She often has "accidents." AR 79. Plaintiff has to urinate frequently and often urinates up to ten times a day. AR 79. She used to take medication to treat her incontinence, but underwent a surgical procedure a year ago to correct the problem. AR. 79-80. However, despite the surgery, she still experiences some loss of urine when she coughs as a result of her asthma. AR 80. Since the surgery, she still has "accidents" approximately three to four times a day. AR 81.

Plaintiff claims her thyroid affects her balance. AR 83. Approximately three to four months ago, she started experiencing problems with her balance. AR 84. Presently, her balance

5

affects her every day. AR 83. She does not drive because she claims she drives like a "drunk person." AR 83-84. Plaintiff recently had bloodwork completed to check her thyroid levels, but her balance has never been tested. AR 84.

Plaintiff has experienced depression every day for approximately three years. AR 84. Her depression affects her ability to function and she tends to "forget things." AR 84. It also affects her concentration and her ability to pay attention. AR 84. Plaintiff can only concentrate for about an hour before she gets tired and then would need to take a break for approximately thirty minutes before being able to focus again. AR 85. Afterwards, she would be able to focus for another hour. AR 85.

Plaintiff experiences some difficulty in performing household activities. She has difficulty standing, washing dishes, cleaning and cooking because of her back pain. AR 86. However, she does cook twice a day, every day of the week. AR 86. Plaintiff claims that she can only do these activities for twenty minutes, then she would need to sit down and rest for an additional twenty minutes. AR 87. Afterwards, she would be able to go back to what she was doing. AR 87.

VE Najarian also testified at the hearing. When asked about Plaintiff's past work, the VE indicated Plaintiff's work as a poultry dresser was classified in the Dictionary of Occupational Titles ("DOT") as light and 2, unskilled; work as a Mexican food maker was classified as light and 2; work as a walnut sorter was classified as light and 2; and work as a fast food cashier was classified as light and 2. AR 89-90.

The VE was asked to consider hypothetical questions posed by the ALJ. First, the VE was asked to assume a worker of the Plaintiff's age, education and work experience who could lift and carry twenty pounds occasionally and ten pounds frequently; stand, walk and sit for six hours out of an eight-hour workday; occasionally climb, balance, stoop, kneel, crouch and crawl; but must avoid concentrated exposure to fumes, dust, odors, gases and poor ventilation; and was only able to understand, remember and carry out simple one or two-step job instructions. AR 91. The VE opined that such an individual would be able to perform Plaintiff's past relevant work as a poultry cutter and a Mexican food maker, but excluded Plaintiff's past work as a walnut sorter

1  because of the potential exposure to dust and also as a fast food worker because it requires more
2  than one or two step job instructions. AR 91.

3  Next, the VE was asked to consider the same individual with the same limitations as the
4  first hypothetical, except that this individual could stand and walk for only two hours. AR 91.
5  The VE opined that this individual could not do any of Plaintiff's past relevant work because
6  those jobs require standing. AR 91. However, the VE advised that such a worker could perform
7  other unskilled jobs, including indoor production worker, assembly worker and sedentary
8  cashier/order clerk. AR 92.

9  The VE was asked again to consider the same individual with the same limitations as the
10 first hypothetical, except this individual could stand and walk less than two hours and sit less
11 than six hours. AR 92. The VE advised that there would not be any jobs that this individual
12 could perform. AR 92. The VE was then asked to assume a hypothetical worker who requires in
13 addition to the customary two breaks and meal period, an additional hour of unscheduled breaks
14 throughout the workday on average, some days maybe a little more, some days a little less. AR
15 92. The VE opined that there would be no jobs available for this hypothetical worker. AR 92.

16 After the VE testified, the ALJ asked Plaintiff's attorney if she had any further questions
17 for the VE and she responded that she did not. AR 92. The ALJ then asked the VE if her
18 testimony was consistent with the DOT and Selected Characteristics of Occupations to which the
19 VE answered affirmatively. AR 93. Finally, the ALJ asked if Plaintiff's attorney had anything
20 further to add. AR 93. Plaintiff's attorney explained that Plaintiff suffers from combinations of
21 severe physical impairments, asthma and restrictive airway disease. AR 93. She also stated that
22 Plaintiff has been diagnosed with sciatica, arthritis of the cervical dorsal spine and as a result, she
23 suffers from chronic low back pain and neck pain. AR 93   Plaintiff's counsel also stated that
24 Plaintiff was diagnosed with fibromyalgia, headaches which are migraine in nature, urinary stress
25 incontinence along with an unstable urethra, and a slightly tender uterus. AR 93. In addition,
26 Plaintiff has been diagnosed with a seizure disorder for which she is receiving treatment for. AR
27 93. Plaintiff's counsel finally added that Plaintiff suffers from a severe mental impairment of
28 major depressive disorder recurrent mild versus dysthymic disorder, but takes the position that

her physical problems are what primarily affect her ability to function. AR 93. Moreover, an x-ray taken on March 12, 2007 of Plaintiff's lumbar spine from Sequoia Community Medical Centers revealed a slight narrowing in her lumbar spine and a magnetic resonance imaging ("MRI") in April 13, 2007 showed mild disc disease most severe at the L5-S1 level. AR 93-94. Plaintiff's counsel pointed out that in September of 2007, Plaintiff was noted to have degenerative joint disease and throughout her treating records, it was noted that there are complaints of low back pain, pain and sciatica. AR 94. Plaintiff also had significant notations of having to go to her treating sources for the asthma and restrictive airways disease and her bronchitis. AR 94. Plaintiff's counsel testified that the urinary stress incontinency is another non-exertional limitation which would cause her to need additional breaks. AR 94. Plaintiff's counsel requested that the treating sources from Family Care Providers, Sequoia Community Health Centers and Community Medical Centers be given a greater evidentiary weight other than the one-time "CE" evaluation and the non-examining "DDS" doctors. AR 94.

**Medical Record**

The entire medical record was reviewed by the Court. A summary of the reports and treatment notes is provided below.

*Ekram Michiel, M.D.*

On March 11, 2006, board certified psychiatrist Ekram Michiel, M.D., performed a consultative psychiatric examination on Plaintiff. AR 220-222. Plaintiff's chief complaint was depression, but she denies any psychiatric hospitalizations. AR 220. Plaintiff informed Dr. Michiel that she is able to take care of her personal hygiene and that she is able to shop, cook and do household chores as well as drive and walk her children to school. AR 221. The mental status examination indicated that Plaintiff's mood was depressed, however, Dr. Michiel made no abnormal examination findings. AR 221-222. Plaintiff had adequate personal hygiene, her gait and posture were normal, she had no involuntary movements or specific mannerisms, maintained good eye contract throughout the interview, and her speech and general body movements were normal. AR 221. Dr. Michiel diagnosed Plaintiff with depressive disorder not otherwise

specified, and assessed a Global Assessment of Functioning ("GAF")[3] score of 65 to 70.  AR 222.  Dr. Michiel opined that Plaintiff would be able to interact with coworkers, supervisors and the general public as well as maintain attention and concentration to carry out one or two step simple job instructions.  AR 222.  However, Plaintiff would be unable to carry out an extensive variety of technical and/or complex instructions.  AR 222.

### *Tahir Hassan, M.D.*

On March 17, 2006, board certified internist Tahir Hassan, M.D., performed a consultative internal medicine examination on Plaintiff.  AR 223-228.  Plaintiff's chief complaints were asthma, bronchitis, back pain, knee pain and depression.  AR 223.  Plaintiff informed Dr. Hassan that she is independent in her activities of daily living.  AR 223.  Dr. Hassan reported that Plaintiff had good muscle tone, full strength (5/5) in all extremities, and normal sensory findings and reflexes.  AR. 227.  Dr. Hassan diagnosed Plaintiff with bronchial asthma, stable, back pain, left knee pain, possible osteoarthritis and depression.  AR 227.  Dr. Hassan concluded that Plaintiff would be able to lift and carry fifty pounds occasionally and twenty-five pounds frequently, limited to her back and knee pain.  AR 228.  Plaintiff would also be able to stand and walk or sit for six hours in an eight-hour work day with normal breaks and occasionally climb, balance, stoop, crouch, and crawl, but would need to avoid dust, fumes, and poor ventilation.  AR 228.

### *Family Care Providers*

Plaintiff received treatment from Family Care Providers from February 23, 2000 through April 28, 2006.  AR 237-317.  Her chief complaints were asthma, knee and hand pain.  AR 242, 244.  On August 19, 2006, Plaintiff underwent an electroencephalogram ("EEG") due to a history of possible nocturnal seizures.  AR 312.  The EEG results were normal.  AR 312.

---

[3] A GAF score is a generalized description of the claimant's level of psychological symptoms. *See* DSM-IV at 32 (4th Ed. 2000) (DSM IV).  The Commissioner has determined the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings." 65 Fed.Reg. 50,746, 50,765 (Aug. 21, 2000).  The DSM-IV-TR states a GAF score from 61-70 indicates: "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

*MRI Imaging Center*

On April 13, 2007, Plaintiff underwent an MRI due to back pain. AR 437. The MRI showed mild disc disease most severe at L5-S1, but no obvious neural foraminal encroachment at any level as well as mild hypertrophy at L3-4, L4-5 and L5-S1. AR 437.

*Sequoia Community Center*

Plaintiff received treatment from Sequoia Community Center from October 30, 2006 through February 12, 2008. AR 353-390, 410-453. Plaintiff's chief complaints were migraine headaches, depression, back and knee pain. AR 353-390; 410-453. On October 22, 2007, Plaintiff underwent a magnetic resonance angiography ("MRA") and a magnetic resonance venography ("MRV") of the brain which were unremarkable. AR 415.

**ALJ's Findings**

The ALJ determined that Plaintiff had engaged in substantial gainful activity after her alleged onset date, but not since June 30, 2001. AR 17. The ALJ found that Plaintiff suffered from the severe impairments of depressive disorder NOS, asthma, obesity and lumbar disc disease. AR 18. However, the ALJ determined that none of the severe impairments met or equaled one of the listing impairments. AR 19.

Based on his review of the medical evidence, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that she can only occasionally climb, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to fumes, dusts, odors, gases and poor ventilation; and can understand, remember and carry out simple, one or two-step job instructions. AR 19. In reliance on the VE's testimony, the ALJ determined Plaintiff's RFC did not prevent her from performing her past work as a Mexican food maker. AR 20. Thus, the ALJ found that Plaintiff was not disabled. AR 20.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla,"

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger,* 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had engaged in substantial gainful activity after January 1, 2000 (the alleged onset date), but she had not engaged in substantial gainful activity since June 30, 2001; (2) has the following severe impairments of depressive disorder not otherwise specified; asthma; obesity; and lumbar disc disease; (3) does not have an impairment or a combination of impairments that

meets or medically equals one of the listed impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926; (4) retained the RFC to perform light work except that Plaintiff can only occasionally climb, balance, stoop, crouch, and crawl; must avoid concentrated exposure to fumes, dusts, odors, gases, and poor ventilation; and can understand, remember and carry out simple one or two-step job instructions and (5) that Plaintiff was not disabled because she could perform her past relevant work.  In doing so, the ALJ found that Plaintiff was not credible given the record as a whole.  AR 17-20.

Here, Plaintiff argues that the ALJ: 1) erred in finding that Plaintiff could return to her past relevant work, 2) and failed to provide clear and convincing reasons to reject Plaintiff's subjective complaints.  Plaintiff contends this Court should reverse and order the immediate payments of benefits.  In the alternative, Plaintiff requests that the case be remanded for a new hearing.

## DISCUSSION

### A.   *Conflict Between the DOT and the VE's Testimony*

Plaintiff complains the VE's testimony is inconsistent with the DOT, and therefore, the ALJ erred by failing to provide a reason for deviation from the DOT.  More particularly, Plaintiff argues that by limiting her to "simple one and two step job instructions," she could perform only jobs with a reasoning of level one.  However, the jobs identified by the VE required a reasoning of level two. (Doc. 18 at 6-8).

Defendant contends there is no conflict between the VE's testimony and the DOT, rather, the conflict was generated by Plaintiff.  As a result, the ALJ did not err and remand is not required.  (Doc. 21 at 5-7).

SSR 00-4p states that generally, occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT.  Where there is an apparent conflict, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled.  *See* SSR 00-4p.  The

ALJ may rely on the testimony of a VE over that of the DOT by determining that the explanation given by the VE is reasonable and provides a basis for doing so. *Id.*

Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the [ Dictionary of Occupational Titles ] nor the [vocational expert] . . . evidence automatically 'trumps' when there is a conflict." *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p). Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.* Where the ALJ fails to ask the VE is the positions are consistent with the DOT, the Court is unable to determine whether substantial evidence supports the ALJ's finding at step five. *Id.*

Here, the ALJ specifically asked the VE whether her testimony regarding available positions was consistent with the DOT. AR. 93. VE Najarian replied that it was. AR 93. *See* SSR 00-4p. ("Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*").

In response to the ALJ's first hypothetical, the VE advised that the hypothetical person could perform Plaintiff's past work as a poultry cutter[4] and a Mexican food maker (DOT 520.687-046). AR 91. In addition, the VE also identified three other unskilled positions in response to the first hypothetical: indoor production work (DOT 685.687-014), assembly worker (DOT 734.687-034), and order clerk (DOT 209.567-014). AR 92. Plaintiff complains "simple one and two step job instructions" limit her to those with a reasoning level of one, but not greater than one. Because the Mexican food maker job has a reasoning level greater than one, Plaintiff contends the ALJ erred and remand is required. (Doc. 18 at 6-8). However, as pointed out by the Commissioner, courts within the Ninth Circuit have consistently held that a limitation regarding simple or routine instructions encompasses a reasoning level of one *and* two.[5]

---

[4] The ALJ noted that although the VE indicated that an individual with Plaintiff's RFC could perform the job as a poultry dresser, that work did not meet the definition of past relevant work.

[5] Reasoning at level two involves applying "common sense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."

In *Meissl v. Barnhart*, 403 F.Supp.2d 981, 983-985 (C.D. Cal. 2005), the Central District of California held that a limitation to simple and repetitive tasks was consistent with level two reasoning positions as provided for in the DOT.  In that case, the claimant was limited to 'simple tasks performed at a routine or repetitive pace." *Id.*, at 982.  The court explained that while the Social Security regulations provided only two categories of abilities with regard to understanding and remembering instructions - "short and simple" and "detailed" or "complex" - the DOT has six gradations for measuring that ability. *Id.*, at 984.   The *Meissl* court held that to

> equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail."  Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

*Meissl v. Barnhart*, 403 F.Supp.2d at 984.  The use of the term "uninvolved" and "detailed" in the DOT qualifies the term and refutes any attempt to equate the SSR use of the term "detailed" with its use in the DOT.  *Id.*  The court found a claimant's RFC must be compared with the DOT's reasoning scale.  Level one reasoning requires slightly less than simple tasks that are in some way repetitive.  An example of a level one reasoning job would include the job of counting cows as they come off a truck.  The court in *Meissl* determined that a limitation to simple repetitive tasks is not inconsistent with positions requiring level two reasoning.  *Id.*

The indoor production worker and the assembly worker involve reasoning at level one; neither is not in conflict with the ALJ's limitation to simple one and two step job instructions. *Meissl v. Barnhart*, 403 F.Supp.2d at 984.  The reasoning level for the Mexican food maker job involves a level two reasoning and thus is also not in conflict with the ALJ's limitation to simple one and two step job instructions.  *Meissl v. Barnhart*, 403 F.Supp.2d at 984.  While the order clerk (DOT 209.567-014) involves a reasoning level three, remand is not necessary.  The positions of indoor production worker and assembly worker combine to provide a regional job total of 12,087.[6]  These numbers constitute a significant number of available jobs.  *Barker v. Secretary of Health & Human Servs.*, 882 F.2d 1474, 1478 (9th Cir. 1989) (finding that 1266

---

[6] To obtain a national figure, the regional totals are divided by nine.  *See* AR 92.

jobs in the Los Angeles/Orange County are were considered significant); *see also Moncada v. Chater,* 60 F.3d 521, 524 (9th Cir. 1995); *Martinez v. Heckler,* 807 F.2d 771, 775 (9th Cir. 1986).

Plaintiff also contends that since she is unable to write in English and all of the jobs contained in the DOT require a language ability of level one, on remand the ALJ should specifically include this limitation in the hypothetical question posed to the VE at step five. (Doc. 18 at 8.) This argument lacks merit because Plaintiff has already performed the job as a Mexican food maker and there is no evidence in the record that indicates her writing ability has diminished since she has ceased working. Moreover, the record includes numerous forms completed by Plaintiff herself that demonstrate an ability to write in English. *See* AR 143-152, 161, 173-180, 181-185.

### A.   *Plaintiff's Credibility*

Next, Plaintiff challenges the ALJ's rejection of her subjective limitations. Specifically, Plaintiff contends the ALJ erred when he did not mention her complaints of chronic migraines even though her complaints are supported by the medical record. In doing so, the ALJ must provide clear and convincing reasons for the rejection. (Doc. 18 at 8-10).

Defendant responds that the ALJ found Plaintiff's subjective allegations not credible for several reasons which were properly supported in the record. In addition, Defendant claims that Plaintiff provides no actual argument as to why the ALJ's credibility analysis cannot withstand judicial scrutiny on the basis of a single impairment that was not the basis of Plaintiff's applications for disability benefits or her subjective testimony. Thus, Plaintiff's cursory argument is without merit. (Doc. 21 at 7-8).

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v.*

*Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997)). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

Here, the ALJ gave specific, clear and convincing reasons for finding Plaintiff's subjective allegations not credible. The ALJ based his credibility finding on the fact that there were inconsistencies between Plaintiff's testimony and the medical evidence, that Plaintiff was able to manage a large family despite her subjective limitations, that she had expressly informed her doctor that she wanted to return to work, as well as Plaintiff's allegation that she lost her job over a maternity leave issue. AR 20. The ALJ stated the following:

> I have given little weight to Ms. Villafana's testimony regarding her limitations. She stated she cannot lift over 5 pounds, stand more than 30 minutes at a time, walk more than 10 to 15 minutes before resting, or sit more than 20 minutes at a time. She said she needs to rest for about an hour and a half daily due to low energy. Because of depression, she can reportedly focus only for an hour, then needs a 30 minute break. On the other hand, she also completed two Function Reports indicating she manages to care for a large family in spite of her subjective complaints (Exhibits 3E, 10E). It appears from her testimony she lost her job in 2001 over a maternity leave issue. She subsequently had another child in April, 2003 (Exhibit 15F, p. 13). In fact, in October, 2006, she told her treating doctor she had increased stress with five children and wanted to go back to work (Exhibit 13F, p. 16), which suggests her current situation at home may be more difficult than working is. The record also includes a third-party Function Report completed by a friend (Exhibit 17E). While these two statements repeat Ms. Villafana's subjective complaints, the also confirm Ms. Villafana's wide range of daily activities in spite of them. Under the circumstances, I do not find Ms. Villafana's subjective symptoms and limitations sufficiently reliable to impose further limitation beyond those supported by the medical evidence. AR 20.

In evaluating Plaintiff's credibility, the ALJ made specific findings identifying the testimony and evidence relied upon. It is clear he did not arbitrarily discredit her testimony. *Thomas v. Barnhart,* 278 F.3d at 958. Thus, the ALJ's findings support his conclusion that Plaintiff was not credible with regard to her subjective limitations.

Plaintiff further contends that the ALJ erred when he did not specifically address her chronic migraines despite the fact that they were supported in her treatment records. Here, Plaintiff alleged disability due to back and knee pain, asthma, bronchitis and depression. She did not allege disability due to migraine headaches. AR 97, 105, 113, 132, 220, 223. At the hearing, the ALJ specifically asked Plaintiff what would prevent her from working a job eight hours a day, five days a week. Plaintiff responded that her back and knee pain, asthma, seizures, thyroid problems, and frequent urination would prevent her from working. AR 64. When questioned further if there was anything else that would prevent her from working, Plaintiff answered "no." AR 64. However, later during the hearing, Plaintiff testified that depression also affected her ability to function. AR 84. Plaintiff never mentioned migraines as a disabling condition at the hearing. AR 47-96. In making his findings, the ALJ gave specific reasons why Plaintiff's right leg and knee problems, frequent urination, and seizures did not constitute severe impairments. AR 18. In addition, the ALJ addressed Plaintiff's testimony regarding her dizziness and poor balance in which he also properly explained why those impairments did not constitute severe impairments. AR 18. Plaintiff neither alleged disability due to migraine headache in her application for disability benefits nor before the ALJ at the hearing. Thus, she has failed to meet her burden. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990) (The burden is on the claimant to establish disability). In sum, the ALJ's findings are supported by substantial evidence and are free of legal error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Maria M. Villafana.

IT IS SO ORDERED.

Dated:   **March 29, 2010**                    **/s/ Gary S. Austin**
                                                                    UNITED STATES MAGISTRATE JUDGE